**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
**FILED**

MAR 0 6 2024

Nathan Ochsner, **Clerk of Court**

| | | |
|---|---|---|
| **ELIMELECH SHMI HEBREW,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-CV-02929** |
| | § | |
| | § | |
| **BRYAN COLLIER, ET AL.,** | § | |
| **Defendants.** | § | |

JOINT PRETRIAL ORDER

## 1.    APPEARANCE OF COUNSEL

Elimelech S. Hebrew
306 North Forest Blvd
Houston, Texas 77090
(713) 820-2041 Telephone
Hebrew.ceo@gmail.com

*PRO SE PLAINTIFF*

Marlayna Ellis
300 W. 15th Street
Austin, TX 78701
(512) 475-4199
marlayna.ellis@oag.texas.gov

ATTORNEY FOR DEFENDANT

## 2.    STATEMENT OF THE CASE

### Plaintiff Statement of the Case:

I the prose plaintiff Hebrew was interviewed by Texas Department of Criminal Justice

(TDCJ) for the Correctional Officer III position May 29, 2019, at the Workforce Solutions located

at 17517 TX-249 Houston, Texas 77064. I presented my graduate degree certificate from Texas

Southern University (TSU) were I graduated with honors in field of Administration of Justice to

the interviewer, and I was exempt from taking TDCJ's exam. July 18, 2019, I was contacted by

Traci Holland. She contacted me about the position available at the Lychiner Unit in Humble, I agreed to the position of Correctional Officer III and signed the Staff Deployment Acknowledgement for employment. August 2, 2019, Mrs. Holland signed me up for the TDCJ cadet academy starting August 19, 2019. I arrived at the TDCJ's Ramsey Training Academy at 5155 FM 655 in Rosharon,

A fifty-mile drive at 6:35 am the class was to begin at 7:00 am. Sgt / Captain Good introduced himself and Ms. Donkayla Dixon he instructed us on becoming an Officer for TDCJ as he spoke officers Ching entered the class at about 9:00 am and discriminatorily shouted; He can't have long hair and work here. Lieutenant Laurence Ching spoke with Sgt / Captain Good for a short time then left the class. Ching came back again and said, I have five days to cut off my hair. I said to Mr. Good: I am not cutting off my hair! Mr. Good brought me to the main office where I filled out a Request for a Religious Accommodation.[1] For my Nazarite vow wearing holylocks and a long beard in accordance with my Hebrew faith[2] written in the Bible the book of Numbers:

> Numbers 6:5 All the days of the vow of his separation there shall no razor come upon his head: until the days be fulfilled, in the which he separateth himself unto Elohim, he shall be holy, and shall let the locks of the hair of his head grow.

At approximately 3:30 pm Good removed me from the other cadets in the class. Then he brought me back to the main office where Major Lance Phillips took pictures[3] of me and removed me from TDCJ's premises stating he would email my information to his superiors, and I should receive a response in five to thirty days on their decision regarding my Request for a Religious Accommodation.

---

[1] Fifth Circuit decision 22-20517 Doc 50.

[2] *Ibid page 1 paragraph 1.*

[3] *Ibid page 2 paragraph 3.*

**Terry Bailey**

| | |
|---|---|
| From: | Lance Phillips |
| Sent: | Monday, August 19, 2019 12:34 PM |
| To: | Terry Bailey |
| Subject: | Accommodation |

Have you ever had a nazerite accommodation request?
We have an male employee who refuses to cut his dreadlocks off, even though they go the his waist. I will have him complete the request.

*Lance Phillips, Major*
*Region III Academy*

**Terry Bailey**

| | |
|---|---|
| From: | Terry Bailey |
| Sent: | Monday, August 19, 2019 2:55 PM |
| To: | Lance Phillips |
| Subject: | RE: Religious Accommodation |
| Importance: | High |

After conversation with Cherie Grotsman who oversees the dress and grooming standards, the cadet will not be allowed to remain at the academy, unless he cuts his hair and shaves the beard. Mr. Hebrew will need to be placed in a leave status until the Religious accommodation is approved or denied

| | |
|---|---|
| From: Lance Phillips | |
| Sent: Monday, August 19, 2019 2:43 PM | |
| To: Terry Bailey | |
| Subject: Religious Accommodation | |

I spoke about TDCJ's bias and malicious action of taking pictures of me that have me looking like a monkey. (See Hebrew's deposition 24:30-25:01 mark of my deposition) held May 23, 2022.[4] TDCJ fired me and denied my Request for a Religious Accommodation violating my Title VII rights affirmed by Appeal from the United States District Court for the Southern District of Texas USDC No. 4:21-CV-2929

Before Dennis, Engelhardt, and Oldham, Circuit Judges. Andrew S. Oldham, Circuit Judge:

The Texas Department of Criminal Justice fired Elimelech Shmi Hebrew after he refused to cut his hair and beard in violation of his religious vow. Hebrew brought a Title VII suit, alleging religious discrimination and failure to accommodate his religious practice. The district court granted summary judgment in favor of defendants. In accordance with the Supreme Court's recent decision in Groff v. DeJoy, 143 S. Ct. 2279 (2023), we reverse.[5]

---

[4] Dkt. 49 CD 'Hébrĕw's deposition 24:30-25:01.
[5] Doc 50 case # 22-20517.

Hebrew received the letter. But he chose to keep his hair and beard in obedience to his religious vow. As a result, <u>TDCJ terminated his employment</u>.[6]

Hebrew's religious practice was more than a motivating factor in <u>TDCJ's termination decision</u>. In fact, <u>it was the only factor that led to his discharge</u>.[7]

**3.    JURISDICTION**

Jurisdiction is not disputed. The Court has federal question jurisdiction pursuant to 28

U.S.C. § 1331, in that I brought this action under Title VII.

**4.    MOTIONS**

The defendants opposed my claim of which I provided the court with affidavits, and I

established a prima facie case required to obtain the defendants "Net worth". Thus, I requested to

the district court in writing asking for TDCJ's and Bryant Collier's to provide me with their "Net

worth" pursuant with federal law:

### III. TDCJ HAVE NOT PROVIDED ITS NET WORTH

TDCJ made completely irrelevant arguments in its reply and did not mention, acknowledge or

comply with my request in my Reply to Defendant TDCJ's Motion To Strike Evidence for the

defendants the Texas Department of Criminal Justice's (TDCJ's) and Bryan Collier's net worth. I

again requested pursuant with:

### S.B. No. 735
### AN ACT

Relating to discovery of evidence of the net worth of a defendant in connection with a claim for
exemplary damages.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
SECTION 1.  Section 41.001, Civil Practice and Remedies

Code, is amended by adding Subdivision (7-a) to read as follows:

---

[6] *Ibid page 3 paragraph 2.*
[7] *Ibid page 11 paragraph 2.*

(7-a) "Net worth" means the total assets of a person minus the total liabilities of the person on a date determined appropriate by the trial court. SECTION 2.  Chapter 41, Civil Practice and Remedies Code, is amended by adding Section 41.0115 to read as follows:

> Sec. 41.0115.  DISCOVERY OF EVIDENCE OF NET WORTH FOR
> EXEMPLARY DAMAGES CLAIM.
>
> (a)  On the motion of a party and after notice and a hearing, a trial court may authorize discovery of evidence of a defendant's net worth if the court finds in a written order that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages. Evidence submitted by a party to the court in support of or in opposition to a motion made under this subsection may be in the form of an <u>affidavit or a response to discovery</u>.[8]
>
> I requested for the TDCJ's and Bryan Collier's net worth.[9]

Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299 (Tex. 2006). An award of exemplary damages within Texas' statutory cap does not foreclose a constitutional review for excessiveness. Mission Res., Inc. v. Garza Energy Trust, 166 S.W.3d 301 (Tex. App.—Corpus Christi 2005, no pet.). The standard, to require the plaintiffs to prove illegal actions beyond a reasonable doubt remove cap.

## 5.    CONTENTIONS OF THE PARTIES

### Plaintiff's Contentions

I was fired by TDCJ and my request for religious accommodation was denied October 22, 2019, by TDCJ stating cause of denial:

> Dear Mr. Hebrew:
>
> Employee Relations received your request for religious accommodation in which you have requested to have a beard and long locks of hair.
>
> The Civil Rights Act of 1964, 42 USC 2000e (j) requires employers to reasonably accommodate employees by allowing them the opportunity to worship or observe their religious practices. Beards are prohibited for safety reasons as security staff must be able to properly wear a gas mask when chemical agents are being utilities throughout the unit. Long locks of hair could be used against you by an offender overpowering you especially from behind. Also, with the amount of hair contraband items cannot be easily detected during search procedures of the unit. Additionally,

---

[8] DKT 56 CASE #: 4:21-cv-02929
[9] DKT 58 CASE #: 4:21-cv-02929

beards and hair of this length are prohibited per PD-28. Dress and Grooming
Standards, therefore, your request to wear a beard and long locks is <u>DENIED with
no further actions</u>.[10]

On April 18, 2020, I filed a Title VII religious discrimination claim with the Equal Employment

Opportunity Commission (EEOC) against the defendants. September 18, 2020, I requested from

the EEOC a Right to sue letter. My request for the Right to sue was obtained June 15, 2021.

September 8, 2021, I filed a lawsuit against the defendants in the district court. The defendant's

original issues was is whether TDCJ discriminated against me was based on my religion when

TDCJ denied my request for my long holylocks and long beard stating:

## I.      NATURE AND STAGE OF THE PROCEEDING

At issue is whether TDCJ discriminated against Hebrew on the basis of his religion when

they denied his request for a long hair and long beard.1[11]

The defendant then began to use "undue hardship" as its argument. The district court agreed

granting the defendant summary judgment. The Fifth Circuit Court disagreed with the district court

and revered the district court judgment. In favor of me as the non-moving party. The Court rebutted

the defendant's "undue hardship" arguments in its decision stating that:

> Hebrew exhausted his administrative remedies. He then filed a pro se lawsuit
> against TDCJ and various officers, which alleged claims of religious discrimination and
> failure to accommodate under Title VII of the Civil Rights Act of 1964. The district court
> dismissed several officers from the suit. The remaining defendants, TDCJ and Executive
> Director of TDCJ Bryan Collier, moved for summary judgment. The district court found
> that Hebrew had established a prima facie case of religious discrimination. Nonetheless, it
> found that TDCJ had a legitimate, non-discriminatory reason for firing Hebrew—to
> promote the safety of officers and security of prisons. The district court also recognized
> that TDCJ failed to accommodate his religious practice. But it rejected Hebrew's failure to
> accommodate claim, reasoning that the accommodation would impose an undue hardship
> on TDCJ. The district court emphasized that TDCJ would have to bear more than a de
> minimis cost because coworkers would have to "perform extra work to accommodate"
> Hebrew's religious practice. ROA.884. The district court granted summary judgment in
> favor of the defendants. Hebrew timely appealed. We review the district court's summary

---

[10] Doc 50 case # 22-20517 page 8 paragraph 8.
[11] DKT 58 CASE #: 4:21-cv-02929

judgment order *de novo*. *See Playa Vista Conroe v. Ins. Co.* of the W., 989 F.3d 411, 414 (5th Cir. 2021). We must construe all facts in favor of Hebrew as the non-moving party.

## II.

Title VII forbids religious discrimination in employment: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a). The statute defines "religion" broadly to include "all aspects of religious observance and practice, as well as belief." Id. § 2000e(j). Title VII also requires employers to accommodate the religious observances or practices of applicants and employees. See id. §§ 2000e-2(a), 2000e(j). Such accommodations often go above and beyond the non-religious accommodations they might otherwise provide. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("Title VII does not demand mere neutrality with regard to religious practices . . . . Rather, it gives them favored treatment . . . ."). In short, Title VII imposes on employers both a negative duty not to discriminate and a positive duty to accommodate. We hold TDCJ breached both duties. TDCJ (A) failed to accommodate Hebrew's religious practice and (B) discriminated against him on the basis of his religious practice.

### A.

All agree that TDCJ failed to accommodate one of Hebrew's fundamental religious practices by requiring him to cut his long hair and long beard in violation of his religious vow. The only question is whether TDCJ has met its burden to show that granting Hebrew's requested accommodation—to keep his hair and beard—would place an undue hardship on TDCJ. We (1) hold TDCJ cannot meet the undue hardship standard, and (2) the Department's counterarguments are unavailing.

#### 1.

The Supreme Court recently clarified the undue hardship standard. *See Groff v. DeJoy*, 143 S. Ct. 2279 (2023). Many lower courts, including the district court in this case, had read a prior Supreme Court decision, *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), to hold an "undue hardship" was *de minimis*.'" *Groff*, 143 S. Ct. at 2286 (quoting *Hardison*, 432 U.S. at 84). In *Groff*, a unanimous Court forcefully rejected this reading. The Court held that a showing of "undue hardship" requires something far greater: an employer must prove that the burden of accommodation "is substantial in the overall context of an employer's business." *Id.* at 2294.

The Court also specified what an undue hardship is not. Because the hardship must affect "the conduct of the employer's business," evidence of "impacts on coworkers is off the table for consideration" unless such impacts place a substantial strain on the employer's business. *Groff*, 143 S. Ct. at 2296 (quoting 42 U.S.C. § 2000e(j)). Even if an impact on

coworkers places a substantial strain on the employer's business, that impact "cannot be considered 'undue'" if it is attributed to religious bias or animosity. *Ibid.*

TDCJ cannot meet the requirements of Title VII for at least four reasons.

First, TDCJ merely argues that the burden it would face is more than de minimis. ROA.477. But as *Groff* held, a de minimis burden does not qualify as an undue hardship. Thus, TDCJ's claim fails at the starting line. Second, TDCJ nowhere identifies any actual costs it will face—much less "substantial increased costs" affecting its entire business—if it grants this one accommodation to Hebrew. *See Groff*, 143 S. Ct. at 2295. TDCJ simply identifies its security and safety concerns without regard to costs. Likewise, TDCJ's reference to possible additional work for Hebrew's coworkers is insufficient to show an undue hardship. See id. at 2296. Finally, TDCJ did not present any evidence that it considered other possible accommodations. See id. at 2297. It simply rejected Hebrew's accommodation request without a thorough examination of "any and all" alternatives. See Adeyeye, 721 F.3d at 455.

TDCJ raises three counterarguments. None is persuasive.

First, TDCJ argues that this accommodation would pose an undue hardship because Hebrew could hide contraband in his hair or beard. But the district court admitted that TDCJ could simply search Hebrew before he entered the prison facilities. See ROA.885. As its own expert attested, TDCJ already "conducts searches of everyone who enters a unit, including its own employees." ROA.552. And TDCJ already searches officers' hair and beards if it suspects hidden contraband. ROA.553; cf. *Holt v. Hobbs*, 574 U.S. 352, 365 (2015) (holding beard searches address prison's safety concerns in context of religious discrimination claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")). TDCJ's expert only feared that "if all officers were permitted to have long hair and long beards, the TDCJ may need to consider changing the way officers are searched." ROA.553. But a hypothetical policy reevaluation if everyone received an accommodation cannot show that TDCJ faces an undue hardship if it grants one accommodation. *See Groff*, 143 S. Ct. at 2295 (instructing us to look to "the case at hand" and "the particular accommodations at issue" (emphasis added)). The fact that a search of Hebrew might take a few extra minutes would not pose a "substantial" or "undue hardship" "in the overall context" of TDCJ's $2.4 billion FY2022 budget. Id. at 2294; Explore Expenditures, Texas Comptroller, https://perma.cc/5FVH-WHV9 (last visited September 12, 2023) (select "Expenditures"; then select "FY2022"; then select "All Expenditures"; select "Texas Department of Criminal Justice" from AGENCY dropdown; and finally select "General Revenue Fund" from APPROPRIATED FUND dropdown).

Second, TDCJ points to the potential safety risks of wearing a gas mask with a beard. Officers sometimes use chemical agents in prisons. When they do, TDCJ encourages the use of gas masks "if time and if the situation permits." ROA.556. Beards can inhibit masks from properly sealing and possibly expose officers to chemicals. TDCJ has offered no evidence whatsoever to show that there is a greater safety risk or hardship in allowing Hebrew to keep his beard. *Cf. Fraternal Order of Police Newark Lodge No. 12 v. City of*

*Newark*, 170 F.3d 359 (3d Cir. 1999) (Alito, J.) (holding that a no beard policy with a medical exemption undermined the prison's stated safety rationale).

Third, TDCJ argues that inmates could grab Hebrew's long beard or hair in an attack and thereby incapacitate him. But again, TDCJ's exception for other individuals undermines its stated rationale. For example, TDCJ permits female officers to have long hair for any reason, religious or secular. And female officers with long hair face the same safety risk Hebrew allegedly would. For example, TDCJ's expert testified that he has seen a woman attacked when an inmate grabbed her hair. ROA.559. Nonetheless, TDCJ continues to allow women to have long hair. This purely secular exception for some officers undercuts TDCJ's proffered safety concerns in creating an exception for Hebrew. *Cf. Fraternal Order*, 170 F.3d at 366; *Fulton*, 141 S. Ct. at 1882. Thus, the policy does not even provide "neutral" treatment toward religious observers, much less the "favored treatment" that Title VII demands. *Abercrombie*, 575 U.S. at 775. With respect to Hebrew's beard, TDCJ has presented no evidence that an officer with a long beard imposes an undue hardship. *Cf. Garner v. Kennedy*, 713 F.3d 237, 247 (5th Cir. 2013) (concluding that TDCJ's no-beard policy for inmates failed under RLUIPA because TDCJ presented "no evidence of any specific incidents affecting prison safety in those systems due to beards"). TDCJ's only evidence belabors the safety concerns of long hair but not long beards. ROA.556. Even if such safety concerns did exist, TDCJ would still bear the burden of demonstrating the "substantial increased costs" needed to address said concerns. *Groff*, 143 S. Ct. at 2295. Thus, TDCJ has not met its burden to show that it would face an undue hardship if it accommodated Hebrew's religious faith.

Next, Hebrew's Title VII religious discrimination claim. As the Supreme Court has held, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie*, 575 U.S. at 773. That means an "employer violates Title VII" if the employee "requires an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision" to terminate the employee. Id. at 773–74. Notably, this "motivating factor" standard is "broader than the typical but-for causation standard" and encompasses many claims of religious discrimination. *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015). An employer need not even know about the employee's religious practice; it violates Title VII so long as it takes the action "with the motive of avoiding the need for accommodating a religious practice." *Abercrombie*, 575 U.S. at 774 (emphasis in original). And motive is especially easy to infer where an employee has submitted a request for an accommodation or where the employer knows of the employee's religious practice. *See ibid.*; *Nobach*, 799 F.3d at 378.

TDCJ argues nonetheless that there is no Title VII violation because its proffered reason for discriminating against Hebrew was neutral and based on legitimate safety concerns. The employer in Abercrombie made the same argument, contending "that a neutral policy cannot constitute 'intentional discrimination.'" 575 U.S. at 775. But the Supreme Court rebuffed this argument, holding:

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not to fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice. An employer is surely entitled to have, for example, a no-headwear policy as an ordinary matter. But when an applicant requires an accommodation as an aspect of religious . . . practice, it is no response that the subsequent failure . . . to hire was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*Ibid.* (quotations omitted). Likewise, in this case, TDCJ cannot hide behind its "otherwise-neutral policy." Ibid. This policy must "give way" to Hebrew's requested accommodation. Ibid. Plain and simple, "religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." *Ibid.*

\* \* \*

For decades, inferior federal courts read a single line from *Hardison* for more than it was worth. The *de minimis* test had no connection to the text of Title VII. *See Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 826–28 (6th Cir. 2020) (Thapar, J., concurring). And by blessing "the denial of even minor accommodation in many cases," the *de minimis* test made it "harder for members of minority faiths to enter the job market." Groff, 143 S. Ct. at 2292 (citing amicus briefs from, *inter alia*, The Sikh Coalition, Union of Orthodox Jewish Congregations of America, and Seventh-day Adventist Church). No more. The decision in *Groff* enables Americans of all faiths to earn a living without checking their religious beliefs and practices at the door.

For the foregoing reasons, we REVERSE the district court's entry of summary judgment and REMAND for proceedings consistent with this opinion.[12]

## 6.   ADMISSIONS OF FACT

1.   The Fifth Circuit Court affirmed that TDCJ fired me in violation of my Title VII rights.

2.   The district court and the Fifth Circuit Court affirmed that TDCJ denied me religious accommodation in violation of my Title VII rights.

3.   The district court and the Fifth Circuit Court affirmed that I established a prima facie case.

4.   The district court and the Fifth Circuit Court affirmed that TDCJ failed to accommodate claim.

---

[12]   Doc 50 case # 22-20517

5.     The district court and the Fifth Circuit Court affirmed that TDCJ failed to accommodate my religious beliefs.

6.     The Fifth Circuit Court reviewed the district court's summary judgment order *de novo. See Playa Vista Conroe v. Ins. Co.* of the W., 989 F.3d 411, 414 (5th Cir. 2021). Construing all facts in my favor.

7.     The Fifth Circuit Court held TDCJ breached both duties. TDCJ (A) failed to accommodate my religious practice and (B) discriminated against me on the basis of my religious practice.

8.     The Fifth Circuit Court affirmed that TDCJ could not consider an impact on its business that it cannot be considered 'undue' <u>if it is attributed to religious bias or animosity</u>.

9.     The Fifth Circuit Court affirmed that TDCJ cannot meet the requirements of Title VII for at least four reasons.

10.    The Fifth Circuit Court affirmed that TDCJ raises three counterarguments. None is persuasive.

11.    The Fifth Circuit Court affirmed that TDCJ has offered no evidence whatsoever to show that there is a greater safety risk or hardship in allowing Hebrew to keep his beard. *Cf. Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (Alito, J.)

12.    The Fifth Circuit Court affirmed that with respect to my beard, TDCJ has presented no evidence that an officer with a long beard imposes an undue hardship. *Cf. Garner v. Kennedy,* 713 F.3d 237, 247 (5th Cir. 2013) (concluding that TDCJ's no-beard policy for inmates failed under RLUIPA because TDCJ presented "no evidence of any specific incidents affecting prison safety in those systems due to beards"). Thus, TDCJ has not met its burden to show that it would face an undue hardship if it accommodated my religious faith.

13.    The Fifth Circuit Court affirmed that my religious practice was more than a motivating factor in TDCJ's termination decision. In fact, it was the only factor that led to my discharge.

14.    The Fifth Circuit Court affirmed my claim TDCJ fired me because of my religion as a fact stating:

        TDCJ told him he would not be able to remain at the training academy so long as he continued to abide by his religious practice. TDCJ placed him on unpaid leave. And then TDCJ fired him for his religious observance of his Nazarite vow. Hebrew has sufficiently proved that TDCJ fired him "because of" his religious practice, so we must reverse the district court's entry of

summary judgment. 42 U.S.C. § 2000e-2(a); see also id. § 2000e(j); *Abercrombie*, 575 U.S. at 773; *Nobach*, 799 F.3d at 379.

## 7.    CONTESTED ISSUES OF FACT

### B.

The defendant's contested issue is based on its argument of "undue hardship." The Fifth Circuit

Court rebutted the defendant's argument of "undue hardship" making it null and void. The Fifth

Circuit Court stated that:

> All agree that TDCJ failed to accommodate one of Hebrew's fundamental religious practices by requiring him to cut his long hair and long beard in violation of his religious vow. The only question is whether TDCJ has met its burden to show that granting Hebrew's requested accommodation—to keep his hair and beard—would place an undue hardship on TDCJ. We (1) hold TDCJ cannot meet the undue hardship standard, and (2) the Department's counterarguments are unavailing.

### 1.

> The Supreme Court recently clarified the undue hardship standard. *See Groff v. DeJoy*, 143 S. Ct. 2279 (2023). Many lower courts, including the district court in this case, had read a prior Supreme Court decision, *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), to hold an "undue hardship" was de minimis.'" Groff, 143 S. Ct. at 2286 (quoting *Hardison*, 432 U.S. at 84). In *Groff*, a unanimous Court forcefully rejected this reading. The Court held that a showing of "undue hardship" requires something far greater: an employer must prove that the burden of accommodation "is substantial in the overall context of an employer's business." *Id*. at 2294. The Court looked to various definitions of "hardship" and concluded:

> under any definition, a hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a "hardship," an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier "undue" means that the requisite burden, privation, or adversity must rise to an "excessive" or "unjustifiable" level.

> *Ibid*. (citation omitted). This is a heavy burden and requires something far greater than de minimis—something more akin to "substantial additional costs or substantial expenditures." *Id*. at 2295 (quotation omitted).

> The Court went on to offer a formulation for lower courts to apply:

We think it is enough to say that an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business.

> What matters more than a favored synonym for "undue hardship" (which is the actual text) is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer.

*Ibid.* (citation and quotation omitted).*

The Court also specified what an undue hardship is not. Because the hardship must affect "the conduct of the employer's business," evidence of "impacts on coworkers is off the table for consideration" unless such impacts pose a substantial strain on the employer's business. Groff, 143 S. Ct. at 2296 (quoting 42 U.S.C. § 2000e(j)). Even if an impact on coworkers places a substantial strain on the employer's business, that impact "cannot be considered 'undue'" if it is attributed to religious bias or animosity. *Ibid.*

Finally, the Court noted that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Ibid.* If a requested accommodation poses an undue hardship, the employer must *sua sponte* consider other possible accommodations. *See id.* at 2297. Only after thorough consideration of other options may the employer deny the employee's request for accommodation. *Cf. Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013) ("On this issue, [the employer] bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship.") (cited in Groff, 143 S. Ct. at 2296).

TDCJ cannot meet the requirements of Title VII for at least four reasons. First, TDCJ merely argues that the burden it would face is more than de minimis. ROA.477. But as Groff held, a de minimis burden does not qualify as an undue hardship. Thus, TDCJ's claim fails at the starting line. Second, TDCJ nowhere identifies any actual costs it will face—much less "substantial increased costs" affecting its entire business—if it grants this one accommodation to Hebrew. *See Groff*, 143 S. Ct. at 2295. TDCJ simply identifies its security and safety concerns without regard to costs. Likewise, TDCJ's reference to possible additional work for Hebrew's coworkers is insufficient to show an undue hardship. *See id.* at 2296. Finally, TDCJ did not present any evidence that it considered other possible accommodations. See *id.* at 2297. It simply rejected Hebrew's accommodation request without a thorough examination of "any and all" alternatives. *See Adeyeye*, 721 F.3d at 455.

TDCJ raises three counterarguments. None is persuasive.

First, TDCJ argues that this accommodation would pose an undue hardship because Hebrew could hide contraband in his hair or beard. But the district court admitted that TDCJ could simply search Hebrew before he entered the prison facilities. See ROA.885. As its own expert attested, TDCJ already "conducts searches of everyone who enters a unit, including its own employees." ROA.552. And TDCJ already searches officers' hair and beards if it suspects hidden contraband. ROA.553; *cf. Holt v. Hobbs*, 574 U.S. 352, 365 (2015) (holding beard searches address prison's safety concerns in context of religious discrimination claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")). TDCJ's expert only feared that "if all officers were permitted to have long hair and long beards, the TDCJ may need to consider changing the way officers are searched." ROA.553. But a hypothetical policy reevaluation if everyone received an accommodation cannot show that TDCJ faces an undue hardship if it grants one accommodation. *See Groff*, 143 S. Ct. at 2295 (instructing us to look to "the case at hand" and "the particular accommodations at issue" (emphasis added)). The fact that a search of Hebrew might take a few extra minutes would not pose a "substantial" or "undue hardship" "in the overall context" of TDCJ's $2.4 billion FY2022 budget. Id. at 2294; Explore Expenditures, Texas Comptroller, https://perma.cc/5FVH-WHV9 (last visited September 12, 2023) (select "Expenditures"; then select "FY2022"; then select "All Expenditures"; select "Texas Department of

Second, TDCJ points to the potential safety risks of wearing a gas mask with a beard. Officers sometimes use chemical agents in prisons. When they do, TDCJ encourages the use of gas masks "if time and if the situation permits." ROA.556. Beards can inhibit masks from properly sealing and possibly expose officers to chemicals. Importantly, both the mask instruction manual and TDCJ's expert stated that any length of beard can prevent proper sealing. ROA.557. In fact, TDCJ's expert acknowledged that he has seen men with "even limited facial hair" unable to seal their masks. ROA.559. Nonetheless, when TDCJ denied Hebrew's accommodation, it allowed officers with medical conditions to have quarter-inch beards. ROA.559. TDCJ now allows all male officers to have quarter-inch beards. ROA.581. TDCJ has offered no evidence whatsoever to show that there is a greater safety risk or hardship in allowing Hebrew to keep his beard. *Cf. Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (Alito, J.) (holding that a no beard policy with a medical exemption undermined the prison's stated safety rationale).

Third, TDCJ argues that inmates could grab Hebrew's long beard or hair in an attack and thereby incapacitate him. But again, TDCJ's exception for other individuals undermines its stated rationale. For example, TDCJ permits female officers to have long hair for any reason, religious or secular. And female officers with long hair face the same safety risk Hebrew allegedly would. For example, TDCJ's expert testified that he has seen a woman attacked when an inmate grabbed her hair. ROA.559. Nonetheless, TDCJ continues to allow women to have long hair. This purely secular exception for some officers undercuts TDCJ's proffered safety concerns in creating an exception for Hebrew.

*Cf. Fraternal Order*, 170 F.3d at 366; *Fulton*, 141 S. Ct. at 1882. Thus, the policy does not even provide "neutral" treatment toward religious observers, much less the "favored treatment" that Title VII demands. *Abercrombie*, 575 U.S. at 775. With respect to Hebrew's beard, TDCJ has presented no evidence that an officer with a long beard imposes an undue hardship. *Cf. Garner v. Kennedy*, 713 F.3d 237, 247 (5th Cir. 2013) (concluding that TDCJ's no-beard policy for inmates failed under RLUIPA because TDCJ presented "no evidence of any specific incidents affecting prison safety in those systems due to beards"). TDCJ's only evidence belabors the safety concerns of long hair but not long beards. ROA.556. Even if such safety concerns did exist, TDCJ would still bear the burden of demonstrating the "substantial increased costs" needed to address said concerns. Groff, 143 S. Ct. at 2295. Thus, TDCJ has not met its burden to show that it would face an undue hardship if it accommodated Hebrew's religious faith.[13]

## 8.   AGREED PROPOSITIONS OF LAW

Jurisdiction and Venue: the court has jurisdiction over the case and that the venue is proper.

The district courts also have jurisdiction in civil matters with a minimum monetary limit but no maximum limit.

## 9.   CONTESTED PROPOSITIONS OF LAW

The defendants have failed to provide me with their net worth that is required in accordance with the federal law:

*Lunsford v. Morris*, 31 Tex. Sup. Ct. J. 207, 207 (Feb. 10, 1988). Based upon the premise that they were seeking punitive damages, the plaintiffs requested production of documentation evidencing the defendants' net worth. *Id*. The trial court refused to order the requested discovery. *Id*. After the court of 1988] 1139 1 Lindow: appeals denied plaintiffs' leave to file a petition for writ of mandamus, the Supreme Court of Texas granted their request. *Id*. In an opinion written by Justice *William W. Kilgarlin*, the court held that evidence of a defendant's net worth is discoverable and admissible at trial for the sole purpose of assessing punitive damages, radically changing over 100 years of Texas procedural and evidentiary law. *See Lunsford, 31 Tex. Sup. Ct. J*. at 209. In discussing the relevancy of a defendant's net worth, the court recognized the two purposes of punitive damages- to deter and punish wrongdoing. See id. at 208. The court reasoned that a defendant's ability to pay is directly related to the issue of deterrence and punishment. *See id*. As a result, the Supreme Court of Texas held that "in cases in which punitive exemplary damages may be awarded, parties may discover and offer

---

[13] Doc 50 case # 22-20517

evidence of a defendant's net worth." *Id.* Texas' traditional disfavor with wealth being a consideration in the assessment of punitive damages, the Supreme Court of Texas in *Lunsford* chose to adhere to the view of forty-three states, substantial federal authority, the United States Supreme Court, and the Restatement (Second) of Torts that hold evidence of net worth is discoverable and admissible for the purpose of assessing punitive damages. *See Lunsford*, 31 Tex. Sup. Ct. J. at 208 nn.2, 3. 31 Tex. Sup. Ct. J. 207, 208 (Feb. 10, 1987). As an example justifying this change in rationale, the court stated:

> [O]ne hundred dollars as a punitive award against a single mother of three small children may be a greater deterrent than one hundred thousand dollars awarded against a major corporation whose directors are shielded from the stark reality of harm done by the paneled walls and plush carpet of the corporate boardroom. *Id.*

> Though persuasive, this argument oversimplifies the problems inherent in unfettered discovery of a defendant's worth merely upon an allegation of entitlement to punitive damages. For example, as stated by counsel for the original defendants in Lunsford: "A business can easily pick a fight and allege any theory for punitive damages and then can discover all the financial worth of a company." Elder & Burch, Plaintiffs Win Twin Victories, Texas Lawyer, Feb. 22, 1988, at 6, col. 3. As a consequence, plaintiffs will now be able to obtain information that has been considered highly confidential in the past. Id. at col. 2. The court to require a plaintiff to make at least a prima facie showing of entitlement to exemplary damages in a pre-discovery hearing. *See, e.g., Wortman v. Shipman*, 737 S.W.2d 438, 442 (Ark. 1987)(trial judge's finding of prima facie action for punitive damages made on basis of affidavit and answers to interrogatories); *Curtis v. Partain*, 614 S.W.2d 671, 674 (Ark. 198 1)(prima facie showing of relevancy required before court orders production of tax records and personal financial data for purpose of assessing punitive damages).

The district court Judge Hittner affirmed I established a prima facie that establish that I am entitled to exemplary damages in stating that:

> The TDCJ does not dispute Hebrew has established <u>a prima facie case of religious discrimination</u>. Thus, the Court finds Hebrew established <u>a prima facie case of religious discrimination</u>. Therefore, the Court must now evaluate whether Collier and the TDCJ had a legitimate, non-discriminatory reason for the adverse employment decision against Hebrew.

> The TDCJ does not dispute Hebrew has made the requisite showing for a prima facie case of his failure to accommodate claim. Thus, the Court <u>finds Hebrew established a prima facie case of failure to accommodate his religious beliefs</u>. Nor does the TDCJ dispute that it did not accommodate Hebrew's religious beliefs.

A second reasonable approach to the introduction of a defendant's net worth is to require that, after a prima facie showing of entitlement to exemplary damages, the party subjected to the discovery need only produce a statement, in admissible form, reflecting the defendant's net worth. Cf Maresca v. Marks, 362 S.W.2d 299, 300 (Tex. 1962)(only relevant portion of income tax returns discoverable); see also Tex. R. Civ. P. 166b(6) (allowing judge to make protective orders in the interest of justice).

The statement, in admissible form, is reflected in TDCJ's 2.4 billion FY2022 budget provided by the United States Court of Appeals for the Fifth Circuit state:

The fact that a search of Hebrew might take a few extra minutes would not pose a "substantial" or "undue hardship" "in the overall context" of TDCJ's $2.4 billion FY2022 budget. Id. at 2294; Explore Expenditures, Texas Comptroller, https://perma.cc/5FVH-WHV9 (last visited September 12, 2023) (select "Expenditures"; then select "FY2022"; then select "All Expenditures"; select "Texas Department of          Criminal          Justice" from AGENCY dropdown; and finally select "General Revenue Fund" from APPROPRIATED FUND dropdown).[14]

The Court of Appeal for the First Appellate District, Division 4, Ruvolo, P.J., held that:

"[w]ealth is an important consideration in determining the excessiveness of a punitive damage award. Because the purposes of punitive damages are to punish the wrongdoer and to make an example of him, the wealthier the wrongdoer, the larger the award of punitive damages." (Id., 205 Cal.App.4th at p. 78, citations omitted.) In *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 390, the court explained that the calculation of punitive damages "involves ... a fluid process of adding or subtracting depending on the nature of the acts and the effect on the parties and the worth of the defendants."

## 8.    AGREED PROPOSITIONS OF LAW

A. Title VII prohibits employment discrimination on the basis of religion. See 42 U.S.C. §

2000e-2(a). Title VII also requires employers to accommodate the religious observances or

practices of applicants and employees. See id. § § 2000e-2(a), 2000e(j).

B. I can recover compensatory damages under Title VII, including emotional distress

damages. See 42 U.S.C. § 1981a(a)(1) (permitting compensatory damages like emotional

distress damages).

---

[14] *Ibid*

### Title VII of the Civil Rights Act of 1964

1.      Back Pay: Compensation for wages, benefits, and other earnings the plaintiff would have received if not for the discrimination.

2.      Front Pay: In lieu of reinstatement (if such is not feasible or desired), compensation for future lost earnings resulting from the discrimination.

3.      Compensatory Damages: These cover non-economic losses, such as emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, and damage to reputation. Note that under Title VII, compensatory damages are subject to statutory caps based on the size of TDCJ, $300,000.

4.      Punitive Damages: Awarded to punish the defendant for particularly malicious or reckless acts of discrimination. Like compensatory damages, punitive damages under Title VII are subject to the same statutory caps based on the employer's size.

### 42 U.S.C. § 1981

Unlike Title VII, § 1981 does not have a cap on compensatory or punitive damages. This can be particularly relevant in cases involving severe discrimination or where the employer is a large entity.

1.      Compensatory Damages: Same as under Title VII, but without the statutory caps. This can include compensation for emotional pain, suffering, inconvenience, loss of enjoyment of life, and damage to reputation.

2.      Punitive Damages: If the defendant's conduct was particularly egregious, punitive damages might be awarded to punish and deter future conduct. There's no statutory cap under § 1981.

3.      Lost Benefits and Opportunities: This can include damages for lost wages, benefits, and other employment opportunities resulting from the discrimination.

In federal EEO law, there is a strong presumption that a complainant who prevails in whole or in part on a claim of discrimination is entitled to full relief which places him/her in the position s/he would have been in absent the agency's discriminatory conduct. *See Albermarle Paper Co. v. Moody* 422 U.S. 405 (1975).

### Additionally

**Interest:** Courts can also award interest on back pay and on other types of damages, to compensate for the time value of money lost due to discrimination.

Furthermore, the United States Court of Appeals for the Fifth Circuit ORDERED the appellee to pay me Hebrew the appellant the costs on appeal to be taxed by the Clerk of this Court stating that:

Before Dennis, Engelhardt, and Oldham, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that appellee pay to appellant the costs on appeal to be taxed by the Clerk of this Court.[15]

## 9.    CONTESTED PROPOSITIONS OF LAW

Plaintiff's Propositions of Law:

A. Back Pay:  The defendant makes a false dispute regarding back pay, TDCJ is liable for back pay. For I Hebrew the plaintiff is the Owner/CEO of Divine Unity 1, Inc., a 501(c)(3) a nonprofit organization since 2005 until the present 2024.[16] Before I filed the lawsuit against the defendant unto this day, proves the defendant argument is false. The facts prove the defendant's argument to be null and void. The defendant made a false dispute regarding my deposition statement. I stated in my deposition if I was offered another position, I would have taken it. The factual evidence as stated:

---

[15] Doc 55 case # 22-20517
[16] Exhibit 1-4

> Heather Dyer: So if you had been offered a job as a Law Librarian instead of a correctional officer
> Hebrew: If they would have offered it[17]

The facts prove the defendant's argument is false. The facts prove the defendant's argument to be null and void.

B. Front Pay: The defendant again makes a false dispute regarding front pay TDCJ is liable for front pay. As the factual evidence has proven, I have successfully owned Divine Unity 1, for two decades. The facts prove the defendant's argument is false. The facts prove the defendant's argument to be null and void.

C. Punitive Damages: The defendant erred in its argument that I cannot obtain punitive damages. The district court and the Fifth Circuit Court affirmed that I have established a prima facie case. And the Fifth Circuit Court provided the defendant's "Net worth" that grant the right to both punitive exemplary damages Justice William W. Kilgarlin stated that:

> In an opinion written by Justice William W. Kilgarlin, the court held that evidence of a defendant's net worth is discoverable and admissible at trial for the sole purpose of assessing punitive damages, radically changing over 100 years of Texas procedural and evidentiary law. *See Lunsford*, 31 Tex. Sup. Ct. J. at 209. In discussing the relevancy of a defendant's net worth, the court recognized the two purposes of punitive damages-to deter and punish wrongdoing. See id. at 208. The court reasoned that a defendant's ability to pay is directly related to the issue of deterrence and punishment. *See id*. As a result, the Supreme Court of Texas held that "in cases in which punitive exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth." *Id*. The court reasoned that a defendant's ability to pay is directly related to the issue of deterrence and punishment. *See id*. As a result, the Supreme Court of Texas held that "in cases in which punitive exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth." Id. Texas' traditional disfavor with wealth being a consideration in the assessment of punitive damages, the Supreme Court of Texas in *Lunsford* chose to adhere to the view of forty-three states, substantial federal authority, the United States Supreme Court, and the Restatement (Second) of Torts that hold evidence of net worth is discoverable and admissible for the purpose of assessing punitive damages. *See Lunsford*, 31 Tex. Sup. Ct. J. at 208 nn.2, 3. 31 Tex. Sup. Ct. J. 207, 208 (Feb. 10, 1987). Though persuasive, this argument oversimplifies the problems inherent in unfettered discovery of a defendant's worth merely upon an allegation of entitlement to punitive damages. For example, as stated by counsel for the original defendants in *Lunsford*: "A business can easily pick a fight and allege any theory for punitive damages and then can discover all the financial worth of a company." *Elder & Burch,*

---
[17] DKT 49 CASE #: 4:21-cv-02929

*Plaintiffs Win Twin Victories, Texas Lawyer*, Feb. 22, 1988, at 6, col. 3. <u>As a consequence, plaintiffs will now be able to obtain information that has been considered highly confidential in the past</u>. Id. at col. 2. The court to require <u>a plaintiff to make at least a prima facie</u> showing of <u>entitlement to exemplary damages</u> in a pre-discovery hearing. *See, e.g., Wortman v. Shipman*, 737 S.W.2d 438, 442 (Ark. 1987)(trial judge's finding of <u>prima facie action</u> for punitive damages made on basis of affidavit and answers to interrogatories); Curtis v. Partain, 614 S.W.2d 671, 674 (Ark. 198 1)(<u>prima facie</u> showing of relevancy required before court orders production of tax records and personal financial data for purpose of assessing <u>punitive damages</u>).

D. Compensatory Damages: The defendant's argument is inaccurate, misleading, and false there are various discriminatory actions that can increase the amount of "Compensatory Damages,":

- **Severity:** More egregious forms of discrimination or harassment, especially those involving physical assault, sexual harassment, or the deliberate infliction of emotional distress, can result in higher compensatory damages.

- **Career Impact:** Discrimination that significantly affects the victim's career trajectory, such as wrongful termination, demotion, or denial of promotion, can lead to higher awards for lost wages, benefits, and opportunities.

- **Malice or Reckless Indifference:** When an employer's actions are found to be malicious or recklessly indifferent to federally protected rights, it can lead to higher compensatory and even punitive damages.

- **Explicit Evidence of Discrimination:** Clear and direct evidence of discriminatory intent, such as racist, sexist, or homophobic remarks and policies, can influence the amount of damages awarded.

All of which the Fifth Circuit in its decision established the defendant in its actions are guilty of.

Furthermore, for the record. I did not apply for employment with TDCJ out of a need as the defendant false arguments implies. I applied for employment with not only with the defendant. I applied for employment for a more dire reason. I had a premonition from Elohim [God] in the summer of 2019. He revealed unto me an ominous evil of darkness would be cast upon the earth causing great burdens and financial hardships upon the nations, principalities, and people upon the earth. That premonition turned out to be COVID19. I spoke of this premonition before the district court as the factual evidence I provided to the district court affirms, when I stated:

I have had the 'Näzárīte vow-long locks upon my head that I separated myself unto our 'Ābbä 'Ĕlôḥīm for nearly three decades. The origin of my Title VII discrimination claims against the Texas Department of Criminal Justice (TDCJ) began in the Spring of 2019, when 'Ĕlôḥīm by his 'Špîrit 'Yähwáh prophesied to me an ominous evil of darkness would be cast upon the earth causing great burdens and financial hardships upon the nations, principalities, and people upon the earth. I revealed the omen to my wife 'Éliänä and 'äwkh 'Bisḥôp 'Šḥäül, I said to them I will get a supplemental job to maintain our financial affairs as well as to provide funds for our company Divine Unity 1, Inc., (DU1) a 501(c)(3) non-profit corporation in preparation for the ominous evil of darkness coming.[18]

## 12. SETTLEMENT

All settlement efforts have been exhausted, this case cannot be settled, and

will have to be tried.

## 13. TRIAL

Probable length of trial: 2-3 days[19]

**Defendant's Propositions of Law:**

A. Back Pay: Mr. Hebrew cannot recover back pay because he has not mitigated his damages. See

Ellerbrook v. Lubbock, Texas, 465 Fed. Appx. 324, 337 (5th Cir. 2012) (holding a Title VII

plaintiff seeking back pay for employment discrimination has a duty to mitigate damages, i.e., to

"use reasonable diligence to obtain 'substantially equivalent' employment."). Mr. Hebrew testified

in his deposition that he did not apply for any other correctional officer or substantially equivalent

positions, nor was he going to apply for any such positions. Because Mr. Hebrew did not apply, or

even attempt to apply to other positions since his employment ended with TDCJ in 2019, he did

not use reasonable diligence to obtain substantially See West v. Nabors Drilling USA, Inc., 330

F.3d 379, 393 (5th Cir. 2003) (holding that if the employer shows that the former employee did

not use reasonable diligence, the employer does not have to prove the availability of equivalent

employment).

---

[18] DKT 58 CASE #: 4:21-cv-02929

[19] I Hebrew the plaintiff will be ready for trial pursuant with the Court's Scheduling Order lists a trial term of March/April 2024.

B. <u>Front Pay</u>: Mr. Hebrew cannot recover front pay because he has not mitigated his damages for the same reasons explained above. See Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir. 2001) (finding that both back pay and front pay are equitable remedies and are subject to a duty to mitigate damages). Additionally, Mr. Hebrew cannot recover front pay because he does not seek reinstatement, although reinstatement is feasible. See Bogan v. MTD Consumer Grp., Inc., 919 F.3d 332 (5th Cir. 2019) (noting that reinstatement is the preferred equitable remedy under Title VII); see also Pollard v. E.I. du Pont de Nemours &amp; Co., 532 U.S. 843, 843 (2001) (holding that front pay will not be awarded unless the plaintiff shows that reinstatement is not feasible).

C. <u>Punitive Damages</u>: Mr. Hebrew cannot recover punitive damages against TDCJ under Title VII because Title VII bars claims for punitive damages against governmental units. See 42 U.S.C. § 1981a(b)(1).

D. <u>Compensatory Damages</u>: Mr. Hebrew's claims for compensatory damages, including emotional distress damages, under Title VII are subject to a statutory cap of $300,000. See 42 U.S.C. § 1981a(b)(3)(D) (setting the cap for compensatory damages at $300,000 "in the case of a respondent who has more than 500 employees…).

14. ATTACHMENTS

Attachment 1: Plaintiff's Motion in Limine

Attachment 2: Plaintiff's Exhibit List

Attachment 3: Plaintiff's Witness List

Attachment 4: Plaintiff's Proposed Questions for Voir Dire

Attachment 5: Proposed charge

Respectfully submitted,

/s/ Elimelech Shmi Hebrew
ELIMELECH SHMI HEBREW Pro Se
306 North Forest Blvd
Houston, Texas 77090
(713) 820-2041
Hebrew.ceo@gmail.com
February 29, 2024

## CERTIFICATE OF SERVICE

I, Elimelech Shmi Hebrew, prose Plaintiff, do hereby certify that a true and correct copy of the above and foregoing has been electronically served via electronic mail to Marlayna M. Ellis the counsel of record for TDCJ.

/s/ Elimelech Shmi Hebrew
ELIMELECH SHMI HEBREW Pro Se
306 North Forest Blvd
Houston, Texas 77090
(713) 820-2041
Hebrew.ceo@gmail.com
February 29, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-02929 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |

PLAINTIFF'S PROPOSED PRETRIAL ORDER

**EXHIBIT 1**

**Plaintiff's Witness List**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-02929 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

PLAINTIFF'S PROPOSED PRETRIAL ORDER

---

COMES NOW, PLAINTIFF, Elimelech Shmi Hebrew ("Hebrew"), and files its Witness List.

**A. Witnesses that WILL BE CALLED to testify at trial:**

1.  Terry Bailey
    Accommodations Coordinator
    Texas Department of Criminal Justice
    Employee Relations
    2 Financial Plaza, Suite 600
    Huntsville, Texas 77340
    (936) 437-3151

2.  Richard Babcock
    Director III of Laundry, Food and Supply
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99
    Huntsville, Texas 77342
    (936) 437-3151

3.  Sgt. Virgilito Amolar
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99

Huntsville, Texas 77342
(936) 437-3151

4.  SGT Alejandro Posada
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99
    Huntsville, Texas 77342
    (936) 437-3151

5.  Cherrie Grossman
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99
    Huntsville, Texas 77342
    (936) 437-3151

6.  John Good
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99
    Huntsville, Texas 77342
    (936) 437-3151

7.  Lawerence Ching
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99
    Huntsville, Texas 77342
    (936) 437-3151

8.  Major Lance Philip
    Texas Department of Criminal Justice-Correctional Institutions Division
    P.O. Box 99
    Huntsville, Texas 77342
    (936) 437-3151

PRO SE PLAINTIFF

CERTIFICATE OF SERVICE
I hereby certify that on March 6, 2024, I served a copy of this Plaintiff's Witness List to
Marlayna Ellis, via email.

/s/ Elimelech S. Hebrew
ELIMELECH S. HEBREW

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-02929 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |

_____

PLAINTIFF'S PROPOSED PRETRIAL ORDER

_____


**EXHIBIT 2**

**Plaintiff's Exhibit List**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-02929 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |

PLAINTIFF'S PROPOSED PRETRIAL ORDER

Plaintiff Elimelech Shmi Hebrew ("Plaintiff") respectfully files this Exhibit List, anticipating the following exhibits will be introduced into evidence and/or used for demonstrative purposes at trial.

| No | Description | Offered | Obj. | Admit | Not Admit |
|---|---|---|---|---|---|
| 1. | Fifth Circuit court Opinion | | | | |
| 2. | Fifth Circuit Decision | | | | |
| | | | | | |
| | | | | | |

PRO SE PLAINTIFF

CERTIFICATE OF SERVICE
I hereby certify that on March 6, 2024, I served a copy of this Plaintiff's Exhibit List to Marlayna Ellis, via email.

/s/ Elimelech S. Hebrew
ELIMELECH S. HEBREW

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:21-CV-02929 |
| v. | § | |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**

**EXHIBIT 3**

**Plaintiff's Proposed Questions for Voir Dire**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-02929 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**

COMES NOW, PLAINTIFF, Elimelech Shmi Hebrew ("Hebrew"), and files its Proposed Voir Dire Questions:

1. Have you or anyone close to you ever been involved in a legal dispute related to employment or discrimination of any kind?

2. Are you familiar with Title VII of the Civil Rights Act of 1964 or any laws related to employment discrimination?

3. This case involves allegations of religious discrimination in the workplace. Have you or someone you know ever felt discriminated against because of your or their religious beliefs?

4. Do you believe that employers should make accommodations for employees' religious practices? Can you think of any situation where an employer should not have to make such accommodations?

5. Have you ever had to request a religious accommodation from your employer, or has anyone ever requested such an accommodation from you? How do you feel about the process?

6. Do you hold any strong beliefs that might affect your ability to impartially listen to evidence regarding religious discrimination?

7. How do you feel about discussing religious practices or beliefs that might be different from your own?

8. This case may involve discussing specific religious practices. Are you comfortable evaluating evidence related to religious practices unfamiliar to you?

9. Are you willing to follow the law as instructed by the judge, even if you might personally disagree with those laws?

10. In a legal context, discrimination claims often involve nuanced facts and legal standards. Do you believe you can fairly weigh evidence and testimony presented to you, applying the law as instructed, without letting personal feelings interfere?

11. The law requires that claims of discrimination be proven by a preponderance of the evidence, meaning more likely than not. Are you comfortable applying this standard of proof, rather than requiring proof beyond a reasonable doubt?

12. Are you willing to follow the law as instructed by the judge, even if you might personally disagree with those laws?

PRO SE PLAINTIFF

CERTIFICATE OF SERVICE
I hereby certify that on March 6, 2024, I served a copy of this Plaintiff's Proposed Questions for Voir Dire to
Marlayna Ellis, via email.

/s/ Elimelech S. Hebrew
ELIMELECH S. HEBREW

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-02929 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| | § | |

_____

PLAINTIFF'S PROPOSED PRETRIAL ORDER

_____

**EXHIBIT 4**

**Plaintiff's Proposed Jury Charge**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|                              |     |                              |
|------------------------------|-----|------------------------------|
| ELIMELECH SHMI HEBREW,       | §   |                              |
|                              | §   |                              |
| Plaintiff,                   | §   |                              |
| v.                           | §   | CIVIL ACTION NO. 4:21-CV-02929 |
|                              | §   |                              |
| BRYAN COLLIER, ET AL.,       | §   |                              |
|                              | §   |                              |
| Defendants,                  | §   |                              |
|                              | §   |                              |
|                              | §   |                              |
|                              | §   |                              |

---

## PLAINTIFF'S PROPOSED JURY CHARGE

---

Plaintiff Elimelech Hebrew, proceeding pro se, submits this Proposed Jury Charge and Interrogatories on the Title VII religious discrimination and failure to accommodate claims against Defendant Texas Department of Criminal Justice ("Defendant"). These proposed instructions and interrogatories are submitted in accordance with the Court's procedures. Plaintiff does not waive the assertion that a judgment in their favor is warranted by the facts and the law and reserves the right to amend or supplement this charge based on the Court's rulings on pending motions, including Motions in Limine, or the evidence presented at trial. Plaintiff further reserves the right to object to the submission of any questions, definitions, and/or instructions that are not supported by sufficient evidence. The submission of this proposed charge by Plaintiff does not, in any manner, constitute an admission that Defendant's defenses are legally valid or tenable.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ELIMELECH SHMI HEBREW,  §
§
Plaintiff,  §
v.  §  CIVIL ACTION NO. 4:21-CV-02929
§
BRYAN COLLIER, ET AL.,  §
§
Defendants,  §
§
§
§

**<u>Proposed Jury Instructions and Charge</u>**

**<u>Preliminary Instructions</u>**

Members of the Jury:

You've now been sworn in as the jury to try this case, a role of great importance and responsibility. As your judge, it's my duty to oversee all questions of law and the procedures we'll follow. You, as the jury, have a different but equally crucial role—you are the judges of the facts.

We've reached an important moment in our proceedings. I want to thank you all for your attention and diligence up to this point. Moving forward, it's my responsibility to guide you through the decision-making process. At the conclusion of the trial, I'll provide you with specific rules of law. It will be your task to apply these rules to the facts as you determine them, based on the evidence presented.

I know this might sound a bit daunting, but remember, you're not alone in this. We're all here to ensure justice is served, and I'll be with you every step of the way, clarifying any legal matters and ensuring the trial runs smoothly. Let's proceed with both seriousness and the understanding that you're playing a key role in our justice system. Thank you for your service and commitment to this important process.

## Deciding the Case

As we decide on this case, there are several critical questions that stand before you, each requiring your thoughtful examination:

**Genuine Religious Belief**: The first question invites you to consider whether the plaintiff, the individual who has brought this lawsuit forward, possesses a sincere or genuine religious belief. This belief must be one that finds itself at odds with a specific rule or requirement set forth in their workplace. It's essential to discern the authenticity and depth of the plaintiff's religious convictions and how these beliefs specifically conflict with their job's demands.

**Communication for Accommodation:** The second point of inquiry focuses on the communication between the plaintiff and their employer regarding their religious beliefs. Did the plaintiff make a clear request to their employer, seeking a modification or accommodation within their work environment to better practice their religion? This involves understanding the nature of the request made and evaluating the clarity and seriousness with which the plaintiff presented their needs to their employer.

**Consequences of Religious Practice**: The final question you must tackle deals with the repercussions faced by the plaintiff as a result of this conflict between their religious beliefs and workplace policies. Was the plaintiff subjected to adverse actions — such as termination, demotion, or any form of unfavorable treatment — specifically because they were unable to adhere to a particular workplace regulation due to their religious practices? This step requires us to connect the dots between the plaintiff's request for accommodation and any subsequent negative outcomes they experienced.

Should we find that the circumstances of this case align with these questions — that is, a genuine religious belief in conflict with workplace policy, a clear request for accommodation, and adverse consequences as a result of this conflict — we may very well be confronting an instance of religious discrimination.

This thoughtful examination is not just about analyzing facts; it's about understanding the nuanced interactions between individual rights and organizational policies. As we proceed, let's keep these guiding questions at the forefront of our deliberations, ensuring that our verdict reflects a comprehensive and fair consideration of the evidence presented.


## On Workplace Accommodations

Ladies and Gentlemen of the jury, as we delve deeper into the heart of this case, it's essential to grasp a fundamental principle that guides our workplaces and the law itself. This principle is about flexibility and respect in accommodating employees' religious beliefs within the framework of a functioning business environment.

The law asks employers to be open—to make practical adjustments, known as 'accommodations,' allowing employees to observe their religious practices. These accommodations should not place a heavy burden on the business. It's about finding ways to respect and integrate an employee's religious needs without significantly disrupting the business's operations.

However, we encounter a limit to this flexibility, termed 'undue hardship.' This concept comes into play when accommodating an employee's religious practices would lead to substantial difficulty or expense. It essentially means that despite efforts to make accommodations, there comes a point where it may not be feasible without harming the business or placing undue strain on other employees.

Deciding what constitutes an 'undue hardship' isn't a decision made lightly. It involves looking closely at the specific circumstances—considering the type of work, the size of the company, its resources, and how the accommodation might affect operations and other employees. This decision balances the need to respect religious practices with the practicalities of running a business and ensuring fairness to all employees.

As we proceed, remember that our discussion isn't just about rules and regulations. It's about people—how we respect individual beliefs while maintaining a fair and productive workplace. This balance is at the core of our deliberations, as we seek to uphold the values of fairness, respect, and dignity for everyone involved.

## Evaluating the Evidence

Ladies and gentlemen of the jury, as you prepare to deliberate on the evidence presented during this trial, I urge you to engage in a thorough and critical examination of all the information before you. This process is one of great responsibility, requiring you to apply not only your judgment but also your collective experiences to interpret the facts of the case accurately.

While assessing the testimony and the evidence, it is essential to weigh each piece against your understanding of logical and reasonable behavior. Your role as evaluators of credibility is paramount, determining what you accept as the truth within the framework of your own experiences and common sense.

However, I must emphasize the importance of balancing your personal insights with an impartial consideration of the evidence. The integrity of our justice system relies on your ability to apply the law as instructed, alongside an objective evaluation of the facts presented.

Your deliberations should be guided by a commitment to fairness, ensuring that your verdict is not only a reflection of your individual and collective experiences but also a testament to the principles of justice and equity. I trust in your capacity to navigate these considerations with the seriousness they deserve. Thank you for your attentive service and dedication to fulfilling this critical civic duty.

### How to Reach a Decision

Ladies and gentlemen of the jury, as you retreat to the jury room for your discussions, I want to remind you to consider everything we've gone through during this trial. Your decision should come from a careful consideration of the evidence, viewed through the lens of the legal principles we've discussed.

### Finalizing Your Verdict

You will be provided with a verdict form to record your decision. It will ask whether the plaintiff has successfully proven their claim of discrimination against the defendant, the entity they are suing. Should you find in favor of the plaintiff, you'll also be tasked with determining appropriate damages.

**Conclusion**

Your role in this process is vital. It's about applying both the evidence and the law impartially to render a verdict. Your judgment helps ensure that justice is served accurately and fairly. Thank you for your attention and dedication to fulfilling this important civic duty.

PRO SE PLAINTIFF

CERTIFICATE OF SERVICE
I hereby certify that on March 6, 2024, I served a copy of this Plaintiff's Proposed Jury Charge to Marlayna Ellis, via email.

/s/ Elimelech S. Hebrew
ELIMELECH S. HEBREW